Clk's Copy
FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
MAR 2 6 1999
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NAVAJO NATION, NAVAJO
AGRICULTURAL PRODUCTS INDUSTRIES,
and ALLIANZ INSURANCE COMPANY,

Plaintiffs,

vs. No. CIV 98-767 JP/LFG

INTERMOUNTAIN STEEL BUILDINGS, INC.,

Defendant/Third Party Plaintiff,

vs.

JACOBSON STEEL & ERECTORS, INC.,

Third Party Defendant.

## MEMORANDUM OPINION AND ORDER

The issue addressed in this Memorandum Opinion and Order is whether this federal court should exercise jurisdiction or defer to the judicial system of the Navajo Nation under the tribal exhaustion rule and principles of comity. The parties raised this issue by filing on February 4, 1999, a "Joint Motion to Confirm Subject Matter Jurisdiction," (Doc. No. 16). After thoroughly considering the applicable pleadings, facts, and law, I conclude that the Joint Motion should be denied, this federal court action should be dismissed, and the parties should first pursue their claims in the Navajo Nation's courts.

I.     BACKGROUND

On June 24, 1998, the three Plaintiffs, The Navajo Nation, a federally regulated Indian tribe with sovereign authority; Navajo Agricultural Products Industries ("NAPI"), a lawfully



organized enterprise of the Navajo Nation; and Allianz Insurance Company ("Allianz"), a non-Indian foreign corporation; filed this action in federal court suing Intermountain Steel Buildings, Inc., ("Intermountain") a non-Indian Idaho corporation. On November 12, 1998, Intermountain filed a third party complaint for indemnity against Jacobson Steel & Erectors, Inc.

Plaintiff Allianz had issued an insurance policy, paid for by the Navajo Nation, that insured against fire loss a building owned by the Navajo Nation and NAPI ("Navajo Plaintiffs"). The insured building was on Navajo land and within the boundary of the Navajo Nation. A fire destroyed the building in April 1996. Plaintiffs then filed this lawsuit alleging jurisdiction under 28 U.S.C. § 1332 and averring counts of negligence, breach of contract, negligence per se, breach of express and implied warranties, claim of third-party beneficiary, and unfair trade practices. No party to this lawsuit has filed suit in the Navajo Tribal Court regarding the subject of this action.

In their Complaint, Plaintiffs allege that the fire caused at least $790,085.56 in damages. Navajo Plaintiffs had filed a claim for their loss under the Allianz insurance policy which obligated Allianz to make payments to Navajo Plaintiffs. (Complaint, ¶ 15.) Once Allianz completes its policy payments, Allianz will become subrogated to the rights, claims, and causes of action of the Navajo Nation. *Id.* The Navajo Nation also alleges that it sustained an uninsured loss of $100,000.00, the amount of its deductible under the Allianz policy. (Complaint, ¶ 16.)

In a proposed Initial Pretrial Report submitted to this court, the parties[1] stipulated that the United States District for the District of New Mexico has subject matter jurisdiction over this lawsuit. Apparently, unease caused the parties to file their Joint Motion to Confirm Subject Matter Jurisdiction seeking confirmation that this court will retain jurisdiction. In the parties' jointly signed memorandum brief accompanying the parties' joint motion, Defendant contends that the primary issue is whether Navajo law and custom established a duty of the Defendant to provide a thermal barrier over insulation Defendant installed in the burned building. (Memo. Brief. p. 2, ¶ 6.) Defendant also asserts that Navajo law regarding insurance, breach of contract and negligence, will apply. (Memo. Brief. p. 4, ¶ 6.) Plaintiffs, however, dispute that expertise in Navajo law and custom will be needed to resolve this action. (Memo. Brief. p. 2, ¶ 7.) Nevertheless, the parties suggest that if Navajo law and custom do apply this federal court could certify questions to the Navajo Nation courts for interpretation. (Memo. Brief. p. 4, ¶ 5.) Navajo Plaintiffs also state that they have reserved their right to raise sovereign immunity as a defense to any counterclaims or cross-claims that

---

[1] Third-Party Defendant Jacobson Steel & Erectors, Inc. was not a party at the time the Plaintiffs and the Defendant prepared and submitted to the court the proposed Initial Pretrial Report. In the Initial Pretrial Report, Plaintiffs and the Defendant stipulated that the United States District Court for the District of New Mexico had subject matter jurisdiction but raised a question about their stipulation by saying: "However, Defendants [sic] question whether the Court will retain subject matter jurisdiction herein as Defendants [sic] claim that all occurrences alleged herein occurred within the Navajo Nation, on property owned by the Navajo Nation, involving contracts entered into with members of the Navajo Nation." Third-Party Defendant Jacobson Steel & Erectors, Inc. did not participate in the filing of the Joint Motion to Confirm Subject Matter Jurisdiction because it was in default at the time the Joint Motion was filed on February 4, 1999. The Clerk's Entry of Default as to Jacobson Steel & Erectors, Inc. was filed March 16, 1999, prompting Jacobson Steel & Erectors, Inc. to file on March 23, 1999, a Motion to Set Aside the Clerk's Entry of Default. Reference to "the parties" means the Plaintiffs and the Defendant but not Third-Party Defendant Jacobson Steel & Erectors, Inc.

may be filed against them. (Memo. Brief. p. 2, ¶ 8.)

## II. DISCUSSION

### The Tribal Exhaustion Rule

"Congress is committed to a policy of supporting tribal self-government and self-determination." *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985). The development of tribal courts plays an important role in furthering the goal of tribal self-government. *See Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 14-15 (1987). "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty," and "[c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mutual*, 480 U.S. at 18.

Based on Congress' commitment to a policy of promotion of tribal self-determination, the United States Supreme Court developed the "tribal exhaustion rule" in *National Farmers*, 471 U.S. at 856-57. This rule "provides that 'as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies.'" *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1376 (10th Cir. 1993) (quoting *Tillett v. Lujan*, 931 F.2d 636, 640 (10th Cir. 1991)); *see also National Farmers*, 471 U.S. at 856-57; *Iowa Mutual*, 480 U.S. at 15-16. In the Tenth Circuit, which promotes expansive application of the exhaustion rule, "tribal court remedies *must* be exhausted with respect to issues other than the scope of the tribal court's jurisdiction." *Calumet Gaming Group-Kansas, Inc., v. Kickapoo Tribe of Kansas*, 987 F.Supp. 1321, 1328 (D.Kan. 1997) (emphasis added).

The Supreme Court created the tribal exhaustion rule, in part, out of the Court's concern that in diversity and federal question cases, "unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Iowa Mutual*, 480 U.S. at 16. Federal court adjudication of tribal court jurisdiction also "infringes upon tribal lawmaking authority, because tribal courts are best qualified to interpret and apply tribal law." *Id.*

There are three exceptions to application of the tribal exhaustion rule. First, the rule does not apply where an assertion of tribal court jurisdiction is motivated by harassment or conducted in bad faith. *See National Farmers*, 471 U.S. at 856 n. 21. Second, the tribal court exhaustion rule is inapplicable when the tribal court action violates express jurisdictional prohibitions. *Id.* Third, the rule does not come into play if tribal court exhaustion would be futile due to an inadequate opportunity to challenge the tribal court's jurisdiction. *Id.*

If none of these three exceptions prohibits consideration of the tribal exhaustion rule, then the court should engage in an analysis "based on comity concerns for Indian tribes in maintaining their remaining sovereignty." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997). These comity concerns, which were articulated by the United States Supreme Court in *National Farmers*, advance three discrete interests: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Id.* (citing *National Farmers*, 471 U.S. at 856-57).

When the dispute at issue is a reservation affair, these comity concerns "almost always

5

dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Zah*, 5 F.3d at 1378; *see also Kerr-McGee*, 115 F.3d at 1507 ("[T]his court at times abstains without making a detailed comity analysis, holding that 'when the dispute is a "reservation affair" there is no discretion not to defer.'") (citations omitted). When the dispute involves non-Indian activity occurring outside the reservation, then the court must assiduously examine the *National Farmers* factors to determine whether comity concerns invoke the tribal exhaustion rule. *Id.*

Finally, I note that the Tenth Circuit has held that "a court has discretion to raise comity issues *sua sponte*." *United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996) (citing *Smith v. Moffett*, 947 F.2d 442, 445 (10th Cir. 1991)). Thus, even if the parties had not raised the tribal exhaustion rule themselves, this court would have the discretion to do so on its own.

### The tribal exhaustion rule requires that the parties exhaust their remedies in the Navajo Tribal Court.

This lawsuit is unusual. Unlike most cases, in this lawsuit Indian plaintiffs, including The Navajo Nation, and a non-Indian plaintiff are suing a non-Indian defendant in federal court. No party has attacked tribal court jurisdiction, but there is no parallel pending action in the Navajo tribal courts. In fact, all of the parties to this action seek to maintain federal court jurisdiction. Thus, at first blush, it might seem unclear whether the tribal exhaustion rule would even pertain to this situation. Upon further consideration, however, it becomes evident that the tribal exhaustion rule does apply, and that it requires the parties to exhaust their remedies in tribal court before seeking federal court relief.

1.  *The tribal exhaustion rule cannot be waived.*

The Navajo Plaintiffs are willing to subject themselves to federal court jurisdiction over their claims against Intermountain. Although they do not expressly say so, the Navajo Plaintiffs seem to be attempting to waive the tribal exhaustion rule by stipulating to this court's subject matter jurisdiction.[2] However, "the requirement of exhaustion of tribal remedies" is not "a mere defense to be raised or waived by the parties." *Smith v. Moffett*, 947 F.2d 442, 445 (10th Cir. 1991). Because the parties cannot waive the tribal exhaustion rule, this court must determine whether it should be followed in this instance to require deference to the Navajo Tribal Court.

2.  *The tribal exhaustion rule applies even when no action is pending in the tribal court and Indian plaintiffs seek to invoke federal court subject matter jurisdiction.*

The comity concerns implicated in federal-tribal cases do not evaporate when some of the plaintiffs seeking to invoke federal court jurisdiction are Indian and the defendant is non-Indian. *See Moffett*, 947 F.2d at 444. In *Moffett*, an Indian plaintiff alleging civil rights violations filed an action in federal district court against federal officials, tribal officials, and private individuals. Although no party had raised comity concerns, and the plaintiff who had

---

[2] The parties state that they "recognize that subject matter jurisdiction cannot be maintained by stipulation, and that this Court has discretion to defer jurisdiction based on the tribal exhaustion rule, and comety [sic] doctrines," (Joint Mot. at 1). This statement appears to be a slight misapprehension of the nature of the tribal exhaustion rule. It does "not deprive the federal courts of subject-matter jurisdiction" because "[e]xhaustion is required as a matter of comity, not as a jurisdictional prerequisite." *Iowa Mutual*, 480 U.S. at 16 n. 8. Thus, the issue before the court is not whether the parties can maintain subject matter jurisdiction by stipulation, or even whether this court has jurisdiction under 28 U.S.C. § 1332. Instead, the issue is whether comity concerns require this court to refrain from exercising its jurisdiction until the parties have exhausted their tribal remedies.

7

filed suit in federal court was Indian, the Tenth Circuit in its discretion raised the tribal exhaustion rule *sua sponte*. *Id.* at 445. The mere fact that two of the three Plaintiffs in this case are the Navajo Nation and a Navajo enterprise does not foreclose this court's applying the tribal exhaustion rule.

Nor does the application of the tribal exhaustion rule hinge upon the existence of a pending suit in tribal court. In *Moffett*, the Tenth Circuit stated, "[t]he fact that [plaintiff] apparently has not yet presented his case to a tribal court *does not diminish the comity considerations* present in this case." *Id.* at 444 (emphasis added). Recognizing that lower courts "have held comity to be a concern even when a case filed in federal court has not yet been filed in tribal court," *id.*, the Tenth Circuit remanded to the district court and directed it to determine whether plaintiff's claims had arisen on the reservation and whether they had been presented to the tribal court. *Id.* at 445-46. The trial court was instructed to decide, after making these determinations, "whether comity requires that a Navajo tribal court first have an opportunity to determine its jurisdiction over the [plaintiff's] complaint." *Id. See also Tsosie*, 92 F.3d at 1041 ("[T]he exhaustion rule does not require an action to be pending in tribal court."); *Zah*, 5 F.3d at 1376 (application of the tribal exhaustion rule "does not depend upon the existence of a pending action in the tribal forum") (citations omitted). The law of the Tenth Circuit uniformly provides that the lack of a pending lawsuit in tribal court does not

render the tribal exhaustion rule inapplicable.[3] Hence, I will proceed to determine whether any of the three *National Farmers* exceptions is present. *See Kerr-McGee*, 115 F.3d at 1507.

> 3. *None of the exceptions in National Farmers bars application of the tribal exhaustion rule.*

The first exception, which involves an assertion of tribal jurisdiction motivated by harassment or bad faith, is inapposite because no party has asserted tribal court jurisdiction. Regarding the second exception, this court has found no evidence, and the parties have pointed to none, suggesting that a tribal court action addressing the claims in this lawsuit would be "patently violative of express jurisdictional prohibitions." *National Farmers*, 471 U.S. at 856 n. 21. Nor is there any indication that the third exception, futility because of the lack of opportunity to challenge tribal court jurisdiction, *id.*, would apply. The Navajo tribal courts have the authority to dismiss a case for lack of subject matter jurisdiction. *Zah*, 5 F.3d at 1377 (citing *Sandoval v. Tinian, Inc.*, 5 Navajo Rptr. 215, 217 (Navajo D.Ct. 1986)). Also, under the Navajo Nation Code, any rulings of the Navajo District Court are subject to review by the Navajo Supreme Court. Nation Code tit. 7 § 801 (1995). Therefore, this court will next consider whether it should abstain from exercising its jurisdiction because of comity concerns.

---

[3] Opinions from other circuit courts and a district court not within the Tenth Circuit seem to be to the contrary. *See e.g. Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 814 (7th Cir.) (declining to apply tribal exhaustion rule when there had been no attack on a tribal court's jurisdiction, no case was pending in tribal court, and the dispute primarily involved state and federal law), *cert. denied*, 510 U.S. 1019 (1993); *Burlington Northern R. Co. v. Blackfeet Tribe of Blackfeet Indian Reservation*, 924 F.2d 899, 901 n. 2 (9th Cir. 1991) (refusing to apply the tribal exhaustion rule when no case was pending in tribal court, the tribal court possessed no special expertise, and the complaint presented issues of federal law), *cert. denied*, 505 U.S. 1212 (1992); *Vance v. Boyd Mississippi, Inc.*, 923 F.Supp. 905, 911 (S.D. Miss. 1996) (holding that tribal exhaustion rule did not apply when no action was pending in the tribal court and the case did not involve any interpretation of tribal law).

4.  *Comity concerns dictate that this court defer to the Navajo tribal courts.*

Before evaluating the three *National Farmers* factors to determine whether abstention is appropriate, this court must determine whether the parties' dispute occurred within the Navajo Nation. If so, it is practically certain that comity concerns will require the parties to exhaust their tribal remedies before proceeding in federal court. *Kerr-McGee*, 115 F.3d at 1507.[4]

Here, the dispute at issue arose from Intermountain's design and construction of a building owned by Navajo Plaintiffs and located on Navajo land within the boundary of the Navajo Nation. Although the parties have attempted to portray this lawsuit as simply a subrogation action between non-Indian litigants, that is a mischaracterization. First, while Allianz is seeking damages from Intermountain under a right of subrogation that may not yet have fully matured, the Navajo Nation is also demanding $100,000.00 for uninsured damages. Second, the central dispute driving this litigation involves Intermountain's alleged faulty design

---

[4] Tenth Circuit case law is confusing as to whether deference to tribal court is *mandatory* and forecloses a comity analysis when a dispute involves a reservation affair, *Kerr-McGee*, 115 F.3d at 1507, or whether the fact that "the activity at issue arises on the reservation" means that comity concerns "*almost always* dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Id.* (quoting *Zah*, 5 F.3d at 1378) (emphasis added).

In *Zah*, the Tenth Circuit stated that "[w]hen the activity at issue arises on the reservation, these policies [from *National Farmers*] almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum." *Zah*, 5 F.3d at 1378. As support for this proposition, the court cited *Crawford v. Genuine Parts Co. Inc.*, 947 F.2d 1405, 1408 (9th Cir. 1991) ("When the dispute is a 'reservation affair' . . . there is no discretion not to defer."), *cert. denied*, 502 U.S. 1096 (1992). In *Kerr-McGee*, the Tenth Circuit seized on *Zah*'s citation to *Crawford* and stated that "this court at times abstains without making a detailed comity analysis, holding that 'when the dispute is a "reservation affair" there is no discretion not to defer.'" *Kerr-McGee*, 115 F.3d at 1507 (citing *Zah*, 5 F.3d at 1378 (quoting *Crawford*, 947 F.2d at 1408)). Because it seems uncertain under the current state of the Tenth Circuit law whether deference is mandatory in cases involving "reservation affairs," this court will undertake the comity analysis prescribed in *National Farmers*.

and construction of the Navajo Plaintiffs' building. Allianz' presence as a party does not change the essential nature of the dispute. *See Tsosie*, 92 F.3d at 1043 ("The United States' decision to bring this suit on behalf of [an Indian plaintiff] does not alter the fact that this is essentially a dispute between Indians over certain rights to land in Indian country.").

Furthermore, Intermountain's own assertions demonstrate that this action is best characterized as a reservation affair. In the parties' Joint Motion, Intermountain insists that the primary issue in this lawsuit is whether it had a duty to provide a thermal barrier over insulation in the burned building and that Navajo law and custom will dictate the existence or non-existence of this duty. Intermountain also contends that Navajo law regarding insurance, breach of contract, and negligence will control this case.

This leads to the inescapable conclusion that the parties' dispute is a reservation affair. *See Calumet*, 987 F.Supp. at 1329 (finding that dispute between Tribe and non-Indian corporation was a "reservation affair" because it concerned the "performance of contracts relating to a gaming operation located on the Tribe's reservation."). As such, comity concerns weigh heavily in favor of requiring that the parties exhaust their remedies in the Navajo tribal courts before resorting to this forum.

An assiduous evaluation of the *National Farmers* factors also requires deference to the Navajo tribal courts. The first factor to consider is whether requiring exhaustion of tribal court remedies will further the congressional policy of supporting tribal self-government and self-determination. *See National Farmers*, 471 U.S. at 856. It is difficult to conceive how tribal self-government and self-determination will be advanced by the exercise of federal court jurisdiction over a matter involving the Navajo Nation, a Navajo commercial entity, and a

11

contract between these Navajo parties and a non-Indian defendant to construct a Navajo-owned building located on Navajo land within the boundary of the Navajo Nation. This is especially true because the parties disagree about the applicability of Navajo law and custom. The Navajo Nation has a sophisticated judicial system with highly competent judges. Moreover, the Navajo tribal courts have an adjunct legal institution, the Navajo Peacemaker Court, that affords an alternative means of dispute resolution which is not available, in the same form, in the federal court system.[5] There is no reason to believe that the courts of the Navajo Nation would not be able to properly address the parties' dispute. To support tribal self-government, the Navajo tribal courts should be given the opportunity to do so.

Even in Supreme Court cases that have abridged tribal authority over non-Indians, the Court has recognized that "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations," including the authority to regulate "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, [and] contracts . . . ." *Montana v. United States*, 450 U.S. 544, 565 (1981); *see also Strate v. A-1 Contractors*, 520 U.S. 438, 445-46 (1997) (discussing the limitations of tribal authority over the conduct of nonmembers on non-Indian land, but noting that *Montana* held that tribes have jurisdiction over nonmembers who enter consensual relationships with the tribe). The Navajo Nation's inherent authority to exercise jurisdiction over this case, which involves a contract between Navajo plaintiffs and a non-Indian business entity, also supports deferring to the tribal court. *See Kerr-McGee*, 115 F.3d

---

[5] The Honorable Robert Yazzie, Chief Justice of the Navajo Nation, has published several articles about the Navajo Peacemaker Court. *See, e.g., "Life Comes From It": Navajo Justice Concepts*, 24 N.M. L. REV. 175, 186-87 (1994).

at 1508 (considering that tribes retain a core sovereign interest in regulating the health and welfare of tribal members when concluding that the first *National Farmers* factor weighed in favor of abstention); *see also Iowa Mutual*, 480 U.S. at 18. ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty."). The promotion of tribal self-government would be undermined by this court's initial exercise of jurisdiction.

An evaluation of the second *National Farmers* factor, the orderly administration of justice, also favors abstaining in deference to the tribal court. "Because of *Iowa Mutual's* expansive abstention, we are required to allow full exhaustion of tribal court litigation, potentially including litigation of the merits." *Kerr-McGee*, 115 F.3d at 1508. Permitting the tribal court to evaluate its own jurisdiction, and to potentially determine the merits of this case, will avoid the prospect of a procedural quagmire in this case in two regards. First, the Navajo Plaintiffs have specifically reserved their right to interpose sovereign immunity in response to any counterclaims or cross-claims that may be brought. This raises the specter of two parallel lawsuits, one in federal court and one in tribal court. Second, if, as Intermountain contends, the issues are governed by Navajo laws and custom, this court may need to certify questions of law to the Navajo Supreme Court, resulting in a significant delay in the resolution of this case.

The third *National Farmers* factor, obtaining the benefit of tribal expertise preliminary to further judicial review, also militates in favor of requiring exhaustion of tribal remedies. By permitting the Navajo Tribal Court to first determine its own subject matter jurisdiction, a federal court that may eventually be called upon to review this determination would have at its disposal a fully developed tribal court record from which to evaluate any challenges to tribal

jurisdiction. Moreover, if the Navajo Tribal Court reached the merits of the action, a federal court would have the benefit of the Navajo Tribal Court's prior interpretation of Navajo law and customs that may apply to this case.

This court's conclusion that the *National Farmers* factors weigh in favor of deferring to the Navajo Tribal Court is also confirmed by the Tenth Circuit's decision in *Brown v. Washoe Housing Authority*, 835 F.2d 1327 (10th Cir. 1988). In that case, plaintiff, a non-Indian corporation, contracted with the defendant, a tribal housing authority, to construct low-cost housing on tribal lands. *Id.* at 1327. Plaintiff later filed suit in federal district court alleging that the defendant had breached and improperly managed the contract. *Id.* Without engaging in a detailed *National Farmers* analysis or explicitly addressing whether the dispute was a "reservation affair," the Tenth Circuit stated that "the considerations of comity relied upon in *Iowa Mutual* require [plaintiff] to exhaust its tribal remedies before a federal court will consider this case." *Id.* at 1328.

Because this dispute is a reservation affair, and because in this case the *National Farmers* factors uphold deference to the tribal court, this court concludes that the parties must exhaust their remedies in the Navajo Tribal Court before turning to the courts of the United States.

The United States Supreme Court in both *National Farmers* and *Iowa Mutual* authorized a federal district court, in its discretion, to either dismiss without prejudice or to stay federal court proceedings when exhaustion of tribal court remedies is required. *See National Farmers*, 471 U.S. at 857; *Iowa Mutual*, 480 U.S at 20 n. 14. In this instance, it seems appropriate to dismiss this action without prejudice to allow the parties to proceed

expeditiously in the courts of the Navajo Nation.

IT IS THEREFORE ORDERED that the parties' "Joint Motion to Confirm Subject Matter Jurisdiction," (Doc. No. 16) is DENIED and this action should be dismissed without prejudice so that the parties may pursue their claims in the courts of the Navajo Nation.

_____
UNITED STATES DISTRICT JUDGE